IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

CHESTER SZYMECKI,      )

Plaintiff,      )

v.      )

THE CITY OF NORFOLK,      )

Defendant.      )

     )       Civil No. 2:08cv142

DEBORAH SZYMECKI,      )

Consolidated Plaintiff,      )

v.      )

ASHLEY HOUCK,      )

Consolidated Defendant.      )

```
┌──────────────────────────┐
│          FILED           │
│  ┌────────────────────┐  │
│  │    SEP 1 1 2008     │  │
│  └────────────────────┘  │
│  CLERK, U.S. DISTRICT COURT │
│       NORFOLK, VA        │
└──────────────────────────┘
```

## OPINION and ORDER

This matter is before the Court on Defendant the City of Norfolk's ("Norfolk" or "Defendant") Motion to Dismiss Plaintiff Chester Szymecki's ("Mr. Szymecki" or "Plaintiff") first amended complaint ("Defendant's Motion"). Doc. 15. For the reasons explained herein, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

### I. Factual Allegations[1]

The facts, as alleged by Mr. Szymecki in his first amended complaint, are as follows. On

---

[1] For purposes of consideration of Defendant's Motion to Dismiss only, the Court accepts the facts as pleaded in Plaintiff's complaint.

June 10, 2007, at approximately 2:00 p.m., Mr. Szymecki, his wife, their three children, and two neighborhood children arrived at Town Point Park in Norfolk, Virginia to attend Harborfest, a local festival. Doc. 13 at ¶ 6 (First Amended Complaint). Mr. Szymecki was carrying a holstered handgun on his right side. Id.

On May 22, 2007, the Norfolk City Council passed Ordinance No. 42,675. Id. at ¶ 3. In part, the ordinance provided that "[i]t shall be unlawful for any person to bring, carry or possess any of the following weapons, whether or not concealed: any pistol, revolver or other weapon designed to propel a missile of any kind . . ." while attending Harborfest ("the Norfolk Ordinance"). Id.

While at Harborfest on June 10, 2007, at approximately 4:30 p.m., Mr. Szymecki was questioned by a female Norfolk deputy sheriff concerning his carrying of the handgun. Id. at ¶ 7. Mr. Szymecki was informed that he would need to leave Harborfest to dispose of his handgun prior to returning because the Norfolk code prohibited the carrying of a handgun at the festival. Id. Mr. Szymecki then "calmly explained" it was his clear right under Virginia law to carry the weapon, even if a local Norfolk ordinance said otherwise. Id. Then, the Norfolk deputy sheriff called for backup and as many as seven Norfolk police officers arrived at the scene. Id. at ¶ 8. These officers pushed Mr. Szymecki out of Town Point Park and across Waterside Drive. Id.

Mr. Szymecki alleges he was detained and handcuffed by police "in a tight fashion" and was required to face the wall of a building. Id. at ¶ 9. Eight Norfolk police officers were present. Id. Mr. Szymecki states he has a severe neurological disability to his right extremities and therefore twice asked the officers to loosen the handcuffs because they were painful and damaging to his right side. Id. Officers did not reply to these requests. Id. After Mr. Szymecki asked a third time, two officers tightened the handcuffs while allegedly commenting that handcuffs are not intended to be comfortable. Id. This was done in the presence of

approximately six other officers.  Id.

Mr. Szymecki was detained for two hours and was then released after being issued a summons for violating the Norfolk Ordinance. Id. at ¶ 10. Mr. Szymecki alleges that after the decision was made to issue him a summons, he was asked by a Norfolk police officer to provide his social security number. Id. Mr. Szymecki states he asked the officer why it was necessary for him to provide his social security number. Id. Mr. Szymecki alleges that he was then "told that the alternative to providing the number would be his arrest and incarceration rather than the issuance of a summons." Id. Mr. Szymecki states he "was not informed why his social security number was needed or how it would be disseminated even though he inquired." Id. Mr. Szymecki states that "[t]o avoid arrest and incarceration, Szymecki supplied his social security number to Norfolk police under duress." Id. After being released from custody, Mr. Szymecki and his family returned to Yorktown, Virginia. Id.

Mr. Szymecki's criminal prosecution for violating the Norfolk Ordinance was later voluntarily dismissed by the City of Norfolk. Id. at ¶ 11. When Mr. Szymecki retrieved his personal property taken from him during his arrest, he was again asked by Norfolk police officers to provide his social security number. Id. Mr. Szymecki alleges that he again asked why that was necessary ". . .and stated his belief the demand was unlawful." Id. Mr. Szymecki states "[h]e was told that the alternative to providing the number would be the refusal to return his property to him." Id. Mr. Szymecki alleges he ". . . was not told why his social security number was needed or how it would be disseminated even though he inquired." Id. Mr. Szymecki explains, "[t]o avoid losing his personal property, Szymecki supplied his social security number to Norfolk police a second time under duress." Id.

## II. Procedural History[2]

On March 24, 2008, Mr. Szymecki filed a complaint against Defendant, pursuant to 42

U.S.C. § 1983, alleging the following Constitutional violations: (1) a violation of "the Second

Amendment constitutional freedom 'to keep and bear arms'"; (2) a violation of the Eighth

Amendment's "prohibition of cruel and unusual punishment"; (3) a violation of the Fifth

Amendment's "guaranty of due process of law"; and (4) a violation of the Fourth Amendment's

"prohibition of unreasonable seizures". Doc. 1 at ¶ 1. Mr. Szymecki also alleged violations of

the "provisions of the Federal Privacy Act, 4 U.S.C. § 552a, Note 7, on two occasions." Id.

On May 21, 2008, Defendant filed a motion to dismiss Mr. Szymecki's complaint. Docs.

3 (Motion) and 4 (Memorandum). On June 27, 2008, the Court granted in part and denied in part

Defendant's motion to dismiss. Doc. 8. The Court dismissed Mr. Szymecki's Second

Amendment violation and Fifth Amendment violation claims. Id. at 10. The Court also

dismissed Mr. Szymecki's claim alleging a violation of Section 7 of the Privacy Act because

such a violation was not properly alleged. Mr. Szymecki was granted leave to amend his

complaint to clarify whether his excessive force claim alleged a violation of his rights under the

Fourth or Fourteenth Amendment and to properly allege a violation of Section 7 of the Privacy

Act. Id.

On July 8, 2008, Mr. Szymecki filed his first amended complaint. Doc. 13. While Mr.

Szymecki does not particularly identify the specific claims made in his first amended complaint,

it appears he makes three: (1) that his arrest for violating the Norfolk Ordinance, itself, was a

violation of his rights under the Fourth Amendment; (2) that it is the custom or practice of the

City of Norfolk's Police Department for arresting officers to use excessive force in violation of

---

[2] This section includes only those aspects of this case's procedural history relevant to the issue before the Court.

the Fourth Amendment and the Fourteenth Amendment; and (3) that the requirement he provide his social security number was a violation of Section 7 of the Privacy Act. See id.

On July 22, 2008, Defendant filed a motion to dismiss Mr. Szymecki's first amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), and a memorandum in support thereof. Docs. 15 (Motion) and 16 (Memorandum). Therein, Defendant argues that "the validity or invalidity under Virginia state law of Norfolk's ordinance prohibiting firearms at Harborfest has no bearing on Mr. Szymecki's rights under the federal Constitution", and therefore requests the Court ". . . dismiss any claim touching upon the validity of the [Norfolk] Ordinance under state law." Doc. 16 at 2, 8. In addition, Defendant also argues that Mr. Szymecki has no claim under the Privacy Act because "the facts alleged show no violation of the Act" and because "[Mr. Szymecki] can maintain no private right of action for a violation of Section 7 of the Privacy Act." Id. at 6-7. For these reasons, Defendant requests the Court dismiss "the Privacy Act claims from this action." Id.

On August 4, 2008, Mr. Szymecki filed a response to Defendant's second motion to dismiss. Docs. 18 ("Plaintiff's Reply to the Defendant's Motion to Dismiss the First Amended Complaint") and 19 (Brief in Support). On August 13, 2008, Defendant informed the Court that it would not be filing a reply to Mr. Szymecki's response. Doc. 21. Accordingly, Defendant's instant motion has been fully briefed and is ripe for decision.

### III. Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A Rule 12(b)(6) motion should only be granted "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears

certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999); see Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff") (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)).

In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (1990)). The Court may also look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

**IV. Analysis**

In his first amended complaint, Mr. Szymecki identifies three claims for relief: (1) that his arrest for violating the Norfolk Ordinance, itself, was a violation of his rights under the Fourth Amendment; (2) that it is the custom or practice of the City of Norfolk's Police Department for arresting officers to use excessive force in violation of the Fourth Amendment and the Fourteenth Amendment; and (3) that the requirement he provide his social security number was a violation of Section 7 of the Privacy Act. Defendant's Motion requests that Mr. Szymecki's first and third claims for relief be dismissed for failure to state a claim. These two claims are discussed separately below.

(1) Mr. Szymecki's Arrest as a Fourth Amendment Violation

In Mr. Szymecki's original complaint, he claimed that the Norfolk Ordinance violated the

rights guaranteed by the Second Amendment. Mr. Szymecki also argued that the Norfolk

Ordinance violated Virginia law. In its Order regarding Defendant's first motion to dismiss, the

Court dismissed Mr. Szymecki's claim alleging a violation of the Second Amendment because

the Norfolk Ordinance did not violate the Second Amendment. See doc. 8 at 5-6. Therein, the

Court also explained that an action pursuant to 42 U.S.C. § 1983 ("§ 1983") cannot be based

alone on a violation of state law and that "if there is no violation of a federal right, there is no

basis for a § 1983 action." Id. (quoting Clark v. Link, 855 F.2d 156, 161 (4th Cir. 1988).

Accordingly, because the Court found that the Norfolk Ordinance did not violate a federal right,

the Court determined it need not determine whether the Norfolk Ordinance violated Virginia law.

In Mr. Szymecki's first amended complaint he again argues that the Norfolk Ordinance

violates Virginia law. While the import of this argument to Mr. Szymecki's claims is unclear on

the basis of the first amended complaint alone, in his response to Defendant's instant motion to

dismiss, Mr. Szymecki explains that his argument that the Norfolk Ordinance is void under

Virginia law is the basis for one of his claims. In that response, Mr. Szymecki argues that "the

Fourth Amendment protects citizens from being detained and prosecuted pursuant to a city

ordinance that was void from its inception." Doc. 19 at 4. Mr. Szymecki explains:

> Citizens are always protected by the Fourth Amendment from unreasonable
> seizures of their person by government [sic]. . . . This situation is little different
> from executing a search warrant at the wrong house. The legal paperwork signed
> by a magistrate is present. The warrant may even directly state the address that
> was in fact searched. But it was mistaken. Therefore, the wronged citizens would
> have recourse under the Fourth Amendment. See United States v. Williams, 981
> F.2d 1003 (8th Cir. 1992). If a fatally defective search warrant can violate the
> Fourth Amendment, so can a fatally defective city ordinance.

Id. at 5.

On the basis of this explanation, it seems that Mr. Szymecki is now arguing that the

Norfolk Ordinance was void under Virginia law and, therefore, his arrest for violating that

ordinance was an unreasonable seizure in violation of the Fourth Amendment. Mr. Szymecki's

argument is without merit and does not state a valid § 1983 claim. As the Court previously

explained, a § 1983 claim cannot be based on a violation of state law; Mr. Szymecki's new

claim attempts to circumvent this requirement of all § 1983 actions. Essentially, Mr. Szymecki

argues that because the Norfolk Ordinance was invalid under state law – a fact that, if true, would

not be a valid basis for a § 1983 claim – his arrest for violating that ordinance was an

unreasonable seizure as prohibited by the Fourth Amendment. Claims like these are not valid

bases for § 1983 actions because they undermine the federal question jurisdictional requirement

of § 1983. In <u>Barwood, Inc. v. District of Columbia</u>, 202 F.3d 290, (D.C. Cir. 2000), the United

States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") aptly described why

claims like Mr. Szymecki's are not valid under § 1983:

> The argument has an initial plausibility: if an arrest without probable cause
> violates the Fourth Amendment, then surely one for which no cause could
> possibly exist must do so. If correct, of course, the argument would transform a
> wide class of state law claims into federal ones. Every arrest claimed to violate
> state law would entail an ancillary federal claim, even though the state law attack
> rested (as here) on state law theories having no connection whatever with the
> policies underlying the Fourth Amendment.

<u>Id.</u> at 294 (finding mere inconsistency with state law will not suffice to create a Fourth

Amendment cause of action).

The Court finds the D.C. Circuit's reasoning in <u>Barwood</u> convincing. Section 1983

cannot be used as a gateway to federal jurisdiction over claims alleging violations of state law.

This conclusion is further supported by Mr. Szymecki's failure to cite any authority, in this

circuit or any other, where a claim like this one has survived a motion to dismiss. Mr. Szymecki

does cite to a number of cases regarding unreasonable searches and seizures, but those cases are

inapposite. Each of the cases cited by Mr. Szymecki concern whether a search or detention

violated the Fourth Amendment; none concern the arrest of an individual for violating a local law or ordinance that was invalid under state law. See Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) (holding a search violated the Fourth Amendment because there was no probable cause); Randall v. Prince George's County, 302 F.3d 188 (4th Cir. 2002) (concerning whether plaintiffs' detentions by county police officers violated their Fourth Amendment rights); Pritchard v. Perry, 508 F.2d 423 (4th Cir. 1975) (holding it is a constitutional deprivation under the color of state law that provides the basis for a § 1983 claim); Hill v. Rowland, 474 F.2d 1374 (4th Cir. 1973) (concerning whether a warrantless arrest without probable cause violated the Fourth Amendment); Cole v. Nebraska State Bd. of Parole, 997 F.2d 442 (8th Cir. 1993) (concerning whether a warrantless arrest violated the Fourth Amendment); Bissonette v. Haig, 800 F.2d 812 (8th Cir. 1986) (holding detention in violation of a statute placing limitations on use of military personnel in enforcing civil law can be considered in determining reasonableness of a seizure). None of these cases support Mr. Szymecki's contention that a § 1983 cause of action arises from the arrest of an individual for violating a local ordinance that may be invalid under state law.

In further support of his argument, Mr. Szymecki claims that his arrest for violating the Norfolk Ordinance ". . . is little different from executing a search warrant at the wrong house." Doc. 19 at 5. To support this argument, Mr. Szymecki cites United States v. Williams, 981 F.3d 1003 (8th Cir. 1992). Mr. Szymecki's general analogy is misplaced, as is his reliance on Williams. In instances where the execution of a search warrant at the wrong house is found to be constitutionally violative, it is the search and its failure to rely on probable cause that gives rise to a Fourth Amendment claim under § 1983, not the warrant itself. Mr. Szymecki's citation of Williams is unpersuasive because Williams was not a § 1983 action, but instead a criminal case where the issue was whether the district court had properly granted a motion to suppress where

false information was included in the search warrant. See Williams, 981 F.3d at 1005. As such, the Williams ruling has no bearing over the issues present here.

For the reasons explained herein, Mr. Szymecki has not stated a viable § 1983 claim. A § 1983 action requires a violation of a federal right, and no federal right was violated by Mr. Szymecki's arrest for violating the Norfolk Ordinance. Accordingly, Defendant's motion to dismiss is **GRANTED** and to the extent that Mr. Szymecki's first amended complaint alleges a claim that his arrest for violating the Norfolk Ordinance was an unreasonable seizure in violation of the Fourth Amendment, it is **DISMISSED**. Further, the Court again **FINDS** that it need not determine whether the Norfolk Ordinance is valid under Virginia law. The parties are **ADVISED** that the Court will not entertain further argument concerning the validity of the Norfolk Ordinance under Virginia law.

### (2) Mr. Szymecki's Claimed Violations of Section 7 of the Privacy Act

Mr. Szymecki's third claim for relief is that his rights under Section 7 of the Privacy Act were violated on two occasions when he was asked to provided his social security number to Norfolk police officers. Defendant argues this claim should be dismissed because Mr. Szymecki ". . . has no private right of action for a violation of Section 7 of the Privacy Act of 1974", and because "[t]he facts alleged show no violation of Section 7 of the Privacy Act." Doc. 15 at 1.

#### (a) Violation of Section 7 as the basis of a § 1983 action

As a threshold matter, the Court must first determine whether a § 1983 cause of action arises from a violation of the provisions of Section 7 of the Privacy Act ("Section 7"). In some instances, § 1983 provides a private right of action for violations of federal statutes. Generally, a federal statute is enforceable under § 1983 if the statute creates a federal right. Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 108 (1989). In order to determine whether a statute creates such a right, three factors are considered: (1) whether Congress intended that the

provision in question benefit the plaintiff; (2) whether the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence; and (3) whether the statute unambiguously imposes a binding obligation. Blessing v. Freestone, 520 U.S. 329, 340-41 (1997). However, even if a plaintiff is able to demonstrate a statute creates a federal right because it meets these three criteria, doing so only creates a rebuttable presumption that the right is enforceable under § 1983. Id. at 341. If Congress specifically foreclosed a remedy under § 1983, dismissal is proper. Id. Such foreclosure can be done expressly, by forbidding recourse via § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983. Id. (citing Livadas v. Bradshaw, 520 U.S. 107, 133 (1994)).

In pertinent part, Section 7 provides that:

> (a)(1) It shall be unlawful for any Federal, State, or local government agency to deny any individual any right, benefit, or privilege provided by law because such individual's refusal to disclose his social security account number. . . .
> (b) Any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it.

5 U.S.C. § 552A Note. The Court must determine whether this language of Section 7 creates a federal right enforceable under § 1983. There is little precedent in this Circuit on the issue of whether Section 7 creates such a right enforceable under § 1983.[3] Accordingly, the Court will

---

[3] The only Fourth Circuit opinion on the issue of Section 7 and § 1983 cited by either party is Deeds v. County of Fairfax, Va., 151 F.3d 1028, 1998 WL 372817 (4th Cir. 1998) (unpublished). There, in an unpublished opinion, the Fourth Circuit upheld the district court's grant of Defendant Fairfax County's motion for summary judgment on the grounds that, as a matter of law, the County substantially complied with Section 7(b). Id. at *1. Therein, the Fourth Circuit held: "*assuming without deciding* that Section 7(b) creates a right, privilege, or immunity enforceable under § 1983, we conclude that the district court below was correct in finding that the County substantially complied with the terms of Section 7(b)." (emphasis added) Id. at *3.

look to other courts that have considered the viability of § 1983 causes of action alleging
violations of Section 7.

To support his argument that Section 7 creates a federal right enforceable under § 1983,
Mr. Szymecki relies on Schwier v. Cox, 340 F.3d 1284 (11th Cir. 2003). There, the Eleventh
Circuit held that rights conferred by Section 7 of the Privacy Act barring agencies from denying
any right because of an individual's refusal to disclose his social security number could be
enforced by a private right of action under § 1983. In Schwier, the plaintiffs attempted to register
to vote in Georgia. Id. at 1286. The plaintiffs submitted voter registration applications but did
not supply their social security numbers on those applications. Id. Local county election
officials notified plaintiffs that unless they supplied their social security numbers, their voter
registrations would be rejected. Id. Two of the plaintiffs won a preliminary injunction allowing
them to vote in the election without providing their social security numbers, however a third was
unable to vote because he did not provide his social security number to officials. Id.

In holding that § 1983 causes of action are appropriate for violations of Section 7, the
court in Schwier noted:

> The Privacy Act of 1974 contains only two substantive sections, section 3
> and section 7. Section 3 of the Privacy Act applies only to federal agencies and,
> among other things, delineates an individuals right to records of federal agencies
> and right to be protected from disclosure of records by federal agencies. Section 3
> contains a comprehensive remedial scheme which includes the right to bring a
> civil action against a federal agency; however, the remedial scheme of section 3
> states it applies only to section 3.
> Section 7 of the Privacy Act bars federal, state, or local agencies from
> denying 'any individual any right, benefit, or privilege provided by law because of
> such individual's refusal to disclose his social security number' to the agency.
> Section 7 of the Privacy Act does not contain its own remedial scheme and is
> explicitly excluded from the remedial scheme of section 3; thus, section 7 has no
> remedial scheme.

Id. at 1287-88. After noting the distinction between the remedial scheme available in Section 3

and the fact that no remedial scheme is created in Section 7, the court then found that Section 7 created a right enforceable under § 1983. The court found that Section 7 of the Privacy Act "clearly confers a legal right on individuals: the right to refuse to disclose his or her [social security number] without suffering the loss 'of any right, benefit, or privilege provided by law.'" Id. at 1292. Finally, the court concluded that Congress did not explicitly foreclose an action under § 1983, and thus ". . . the presumption that the rights conferred by section 7 of the Privacy Act may be vindicated via a suit under § 1983 stands . . . and [those] rights . . . may be enforced under § 1983." Id.

In opposition of Mr. Szymecki's argument that Section 7 creates a right enforceable under § 1983, Defendant suggests the Court follow the holding of the Ninth Circuit in Dittman v. California, 191 F.3d 1020 (9th Cir. 1999). In Dittman, the plaintiff was a licensed acupuncturist in California. 191 F.3d at 1024. The plaintiff was informed that disclosure of his social security number was a necessary condition to the renewal of his license and failure to provide it would result in his application not being processed. Id. The plaintiff's § 1983 action argued that requiring disclosure of his social security number was a violation of Section 7. Id. The Ninth Circuit found that Section 7 met the three requirements for statutes to create rights enforceable under § 1983, finding that Section 7 was clearly enacted to benefit individuals, that the statutory obligation is clear, and that the judiciary is capable of enforcing the right. Dittman, 191 F.3d at 1028. However, the court then found that Congress specifically foreclosed a remedy under § 1983 because it "limit[ed] the scope of the Privacy Act's civil remedy provision." Id. Therefore, the Ninth Circuit held ". . . a private plaintiff may not maintain an action . . .under § 1983 to remedy alleged violations of § 7(a)(1) of the Privacy Act." Id. at 1029.

The Court finds the argument articulated by the Eleventh Circuit in Schwier more convincing than that offered by the Ninth Circuit in Dittman. Dittman was decided almost four

years prior to <u>Schwier</u> and the Eleventh Circuit discussed <u>Dittman</u> in its <u>Schwier</u> opinion. The

Eleventh Circuit noted that the authority the <u>Dittman</u> court relied on to find that Congress had

foreclosed a remedy under § 1983 dealt only with the civil remedy provisions of Section 3, not

Section 7. As the <u>Schwier</u> court explained:

> In summary, <u>Unt, Polchowski</u>, and <u>St. Michael's</u>, all relied upon by the Ninth
> Circuit in <u>Dittman</u>, were distinguishable from <u>Dittman</u> and did not support the
> Ninth Circuit's holding in that case. <u>Dittman</u> failed to recognized that the
> remedial scheme of section 3 applies only to section 3 and has no bearing on
> section 7. Thus, the remedial scheme of section 3 provides no basis for
> concluding that Congress intended to preclude private remedies under § 1983 for
> violations of section 7.

<u>Schwier</u>, 340 F.3d at 1289. This reasoning is persuasive. The remedial scheme in Section 3 does

not apply to Section 7. Therefore, because Congress limited the scope of the remedial scheme

under Section 3 to actions against federal agencies should have little bearing on whether a private

cause of action exists under § 1983 for violations of Section 7. Accordingly, Congress did not

specifically foreclose a remedy under § 1983 for violations of Section 7 because Section 3's

remedial scheme does not extend to Section 7.

While the Eleventh Circuit and Ninth Circuit disagree about whether Congress foreclosed

a remedy under § 1983 for violations of Section 7, both courts agree that Section 7 confers a

legal right on individuals. See <u>Schwier</u>, 340 F.3d at 1292 (holding Section 7 "clearly confers a

legal right on individuals"); <u>Dittman</u>, 191 F.3d at 1028 (finding Section 7 was clearly enacted to

benefit individuals, that the statutory obligation is clear, and that the judiciary is capable of

enforcing the right). The Court agrees with this conclusion. Accordingly, because Section 7

confers a legal right on individuals and because Congress did not specifically foreclose a remedy

under § 1983 for violations of Section 7, the Court finds that violations of Section 7 are

enforceable under § 1983.

*(b) Whether the facts alleged sufficiently plead a violation of Section 7*

Defendant's second argument in support of dismissing Mr. Szymecki's Section 7 claim is that Mr. Szymecki's ". . . allegations do not make out a violation of Section 7(a) of the Privacy Act." Doc. 16 at 6. Defendant argues that Mr. Szymecki's first amended complaint only ". . . establishe[s] that [Mr. Szymecki] provided the police his social security number, he did not refuse to provide it, and he therefore cannot maintain any action based on being denied a right for refusing to provide the social security number, pursuant to section 7(a)." Id.

In its Order ruling on Defendant's motion to dismiss Mr. Szymecki's initial complaint, the Court dismissed Mr. Szymecki's claim alleging a violation of Section 7 because such a violation was not properly alleged. See doc. 8 at 8-10. The question now is whether Mr. Szymecki has alleged facts in his first amended complaint sufficient to survive a Rule 12(b)(6) motion to dismiss.

As previously noted, a Rule 12(b)(6) motion to dismiss tests only the sufficiency of the complaint; it does not resolve contests surrounding the facts or the merits of the claim. Republican Party of N.C., 980 F.2d at 952. Further, such a motion should only be granted "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards,178 F.3d at 244.

Mr. Szymecki's original Section 7 violation claim alleged only that he had provided his social security number of two occasions when "required" to do so and that this was ". . . in violation of federal law." Doc. 1 at ¶ 11. As the Court explained, such allegations were insufficient to state a claim because they did not ". . . allege that [Mr. Szymecki] refused to provide his social security number and was forced to do so." Doc. 8 at 9. In his first amended

complaint, Mr. Szymecki now alleges facts that are sufficient to allow his case to go forward. Not only does Mr. Szymecki allege that during each instance where he was "required" to provide his social security number he first asked why it was necessary for him to do so, he also alleges that he was informed that he would be incarcerated and his property would not be returned to him if he did not comply. Regarding the first incident, Mr. Szymecki alleges that he was "told the alternative to providing the number would be his arrest and incarceration rather than the issuance of a summons"; regarding the second incident, Mr. Szymecki alleges that he was "told the alternative to providing the number would be the refusal to return his property to him." Doc. 13 at ¶¶ 10-11. Taken in the light most favorable to Mr. Szymecki, such allegations are sufficient to state a claim alleging a violation of Section 7(a) of the Privacy Act.

Further, Mr. Szymecki has alleged facts sufficient to allege a violation of Section 7(b). Section 7(b) states "any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether the disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it." 5 U.S.C. § 552A Note. In his first amended complaint, Plaintiff now alleges that he "was not informed why his social security number was needed or how it would be disseminated even though he inquired." Doc. 8 at ¶ 10. Such factual allegations essentially allege that the Norfolk police officers failed to comply with the requirements of Section 7(b). Accordingly, Mr. Szymecki has properly alleged violations of Section 7(b) of the Privacy Act.

After accepting all well-pleaded allegations in Mr. Szymecki's complaint as true and drawing all reasonable factual inferences from those facts in his favor, it does not appear certain that Mr. Szymecki cannot prove any set of facts in support of his Section 7 claim. Accordingly, Defendant's request to dismiss Mr. Szymecki's claim alleging violations of Section 7 of the Privacy Act is **DENIED**.

Page 16 of 17

## V. Conclusion

For the reasons explained herein, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.  Defendant's motion to dismiss is **GRANTED** and to the extent that Mr. Szymecki's first amended complaint alleges a claim that his arrest for violating the Norfolk Ordinance was an unreasonable seizure in violation of the Fourth Amendment, it is **DISMISSED**.  Defendant's request to dismiss Mr. Szymecki's claim alleging violations of Section 7 of the Privacy Act is **DENIED**.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

_____/s/_____
Henry Coke Morgan, Jr.
Senior United States District Judge

_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 8, 2008