IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FILED

DEC 17 2008

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

|  |  |
|---|---|
| CHESTER SZYMECKI, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE CITY OF NORFOLK, | ) |
| Defendant. | ) |
|  | ) Civil No. 2:08cv142 |
| DEBORAH SZYMECKI, | ) |
| Consolidated Plaintiff, | ) |
| v. | ) |
| ASHLEY HOUCK, | ) |
| Consolidated Defendant. | ) |

## OPINION & ORDER

This matter is before the Court on Consolidated Defendant Sheriff's Deputy Ashley Houck's ("Defendant" or "Deputy Houck") motion for summary judgment ("Deputy Houck's Motion"). Doc. 57. The Court heard argument on Deputy Houck's Motion during the Final Pretrial Conference held on December 5, 2008. The Court took Deputy Houck's Motion under advisement.

A jury trial in this matter began on December 16, 2008. At the close of Consolidated Plaintiff Deborah Szymecki's ("Plaintiff" or "Mrs. Szymecki") case-in-chief, Deputy Houck renewed her motion for summary judgment. After hearing argument, the Court **FOUND** that qualified immunity applied to Deputy Houck and therefore **GRANTED** Deputy Houck's Motion.

This opinion and order serves to more fully explain the Court's reasoning.

## I. Factual Background[1]

Actions allegedly taken by Deputy Houck during the arrest of Mrs. Szymecki's husband on June 10, 2007 form the basis of Mrs. Szymecki's suit. On June 10, 2007, at approximately 2:00 p.m., Mrs. Szymecki, her husband ("Mr. Szymecki"), their three children, and two neighborhood children arrived at Town Point Park in Norfolk, Virginia to attend Harborfest, a local festival. Mr. Szymecki was carrying a holstered handgun on his right side.

At approximately 4:30 p.m., Mr. Szymecki was questioned by Norfolk Sheriff's Deputy Houck concerning his carrying of the handgun. Deputy Houck informed Mr. Szymecki that he would need to leave Harborfest to dispose of his handgun prior to returning because the Norfolk code prohibited the carrying of a handgun at the festival. Mr. Szymecki then "calmly explained" it was his clear right under Virginia law to carry the weapon, even if a local Norfolk ordinance said otherwise. Then, Deputy Houck called for backup and as many as seven Norfolk police officers arrived at the scene. These officers pushed Mr. Szymecki out of Town Point Park and across Waterside Drive.

Mrs. Szymecki alleges that after officers began to push her husband across Waterside Drive, she grasped her cell-phone in anticipation of taking video of her husband's arrest. Mrs. Szymecki claims that Deputy Houck "[i]mmediately . . . pushed her backwards and shouted to Mrs. Szymecki to 'put it away or go to jail' and ordered her to leave the festival grounds immediately and not to return." Then, Deputy Houck and a Norfolk police officer escorted Mrs. Szymecki off festival grounds.

---

[1] The material facts include those facts presented by the plaintiff, Deborah Szymecki, at the trial commencing on December 16, 2008 as well as any undisputed facts presented by the plaintiff and defendant in opposition to and in support of Ashley Houck's Motion for Summary Judgment prior to trial.

## II. Procedural History[2]

On March 24, 2008, Mrs. Szymecki filed a complaint pursuant to 42 U.S.C. § 1983 ("§ 1983") against Deputy Houck alleging two constitutional violations: (1) Deputy Houck violated Mrs. Szymecki's First Amendment rights "by prohibiting her from filming an event in a public place that she wished to recount to others and possibly to the press at a later time"; and (2) Deputy Houck violated Mrs. Szymecki's "Fourth Amendment freedom against an unreasonable seizure of the person by prohibiting her from enjoying the relative safety and amusement of the Harborfest celebration during her husband's detention by Norfolk police." Docket No. 2:08cv 143; Doc. 1 at ¶¶ 11-12.

On July 8, 2008, Deputy Houck filed a motion that the Court later construed as a motion to dismiss. Docket No. 2:08cv143; Doc. 7. After the motion to dismiss was fully briefed, the Court entered an order granting in part and denying in part Deputy Houck's motion to dismiss. Doc. 35. The Court dismissed Mrs. Szymecki's Fourth Amendment violation claim but allowed Mrs. Szymecki's First Amendment violation claim to go forward.

On November 18, 2008, Deputy Houck filed the instant motion and a memorandum in support thereof. Docs. 57 (Motion) and 58 (Memorandum). Mrs. Szymecki filed a response in opposition to Deputy Houck's Motion on December 1, 2008. Doc. 74. Deputy Houck's rebuttal to Mrs. Szymecki's response was filed on December 4, 2008. Doc. 81. The Court heard argument on Deputy Houck's Motion at the Final Pretrial Conference. At that time, the Court chose to take Deputy Houck's Motion under advisement, in large part because Deputy Houck's Motion failed to comport with the requirements of Local Civil Rule 56(b).[3]

---

[2] This section includes only those aspects of this case's procedural history relevant to the issue before the Court.

[3] Deputy Houck's Motion did not include a statement of undisputed facts.

A jury trial in this matter commenced on December 16, 2008. At the close of Mrs. Szymecki's case-in-chief, Deputy Houck renewed her motion for summary judgment, arguing that the affirmative defense of qualified immunity applied. Upon hearing argument on this issue from both parties, the Court **FOUND** that qualified immunity applied to Deputy Houck and, therefore, **GRANTED** Deputy Houck's motion for summary judgment.

### III. Legal Standard

Summary judgment is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004); Terry's Floor Fashions v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985). The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718 (4th Cir. 2003); see Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Honor, 383 F.3d at 185; McLean, 332 F.3d at 718-19. Such facts must be presented in the form of exhibits and sworn affidavits. Celotex Corp., 477 U.S. at 324; see also M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1993). Failure by plaintiff to rebut defendants' motion with such evidence on his behalf will result in summary judgment

when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

Although the court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact. See Anderson, 477 U.S. at 252; Matsushita, 475 U.S. at 586; Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997); Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D. Va. 2004). Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party. See Anderson, 477 U.S. at 252

## IV. Analysis

Mrs. Szymecki's sole remaining claim alleges a violation of her rights guaranteed by the First Amendment. Specifically, Mrs. Szymecki alleges that Deputy Houck violated her First Amendment rights when Deputy Houck told her to "put it away or go to jail" when Mrs. Szymecki allegedly attempted to use her cellular phone to record her husband's arrest. Mrs. Szymecki brings this claim pursuant to 42 U.S.C. § 1983 ("§ 1983"). Section 1983 creates a private cause of action against any person acting under the color of state law who violates the rights created by the Constitution and laws of the United States. See 42 U.S.C. § 1983.

In her motion for summary judgment, Deputy Houck argues that the affirmative defense of qualified immunity applies. The doctrine of "qualified immunity protects government

officials from civil damages in a § 1983 action 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Edwards v. City of Goldsboro, 178 F.3d 231, 250 (4th Cir. 1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The defense of qualified immunity may be raised at any stage of the proceedings. See Hunter v. Bryant, 502 U.S. 224, 227-28 (1991).

A two-step analysis is used to determine whether qualified immunity applies to a given defendant. The initial inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation. Hope v. Pelzer, 536 U.S. 730, 736 (2002); Saucier v. Katz, 533 U.S. 194, 201 (2001). If a constitutional violation is established, the court must then determine whether the specific right was clearly established, such that "a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

As to the second inquiry, the Court must first "identify the specific right that the plaintiff asserts was infringed by the challenged conduct with a high level of particularity." Edwards, 178 F.3d at 251. Then, the Court must determine whether that specific right was clearly established at the time of the claimed violation. Id. If it is determined that the specific right was clearly established at the time of the claimed violation, the Court may then consider whether a reasonable person in the official's position would have known that his conduct violated that right. Id. (citing Anderson, 483 U.S. at 639).

Applying the first step of the qualified immunity analysis to the facts before the Court, it is difficult to determine conclusively whether Mrs. Szymecki's allegations, if true, establish a constitutional violation. As the Court explained in its order on Deputy Houck's motion to dismiss, the Court found that "the First Amendment protects the video recording of the actions of police officers, subject to reasonable time, place, and manner restrictions." Doc. 35 at 7.

Further, the Court explained that "If [Mrs. Szymecki's] allegations are true, it is possible that Deputy Houck's actions violated Mrs. Szymecki's First Amendment rights." Id. at 8. The fact that it is "possible" that Deputy Houck's actions violated Mrs. Szymecki's rights does not mean that the Court finds that her actions did, in fact, violate the First Amendment; the Court previously held that the First Amendment protects the video recording of the actions of police officers, but noted that protection is subject to reasonable time, place and manner restrictions.

The evidence presented at trial was that provided by Mrs. Szymecki during her case-in-chief. On the basis of that evidence, the Court assumes without ruling, and for the purposes of this motion only, that Deputy Houck's actions were, in fact, constitutionally violative. Regardless, the second step of the qualified immunity analysis is dispositive on the issue.

Pursuant to the second step of the qualified immunity analysis, the Court must determine whether the specific right alleged to have been violated was "clearly established". To determine whether a right was clearly established for the purposes of this analysis, "'the 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional.'" Edwards, 178 F.3d at 251 (quoting Swanson v. Powers, 937 F.2d 965, 969 (4th Cir. 1991)). "In determining whether a right was clearly established at the time of the claimed violation, 'courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose....'" Id. (quoting Jean v. Collins, 155 F.3d 701, 709 (4th Cir. 1998) (en banc)). While the nonexistence of a case holding the defendant's identical conduct to be unlawful does not necessarily prevent the denial of qualified immunity, "'[i]f a right is recognized in some other circuit, but not this one, an official will ordinarily retain the immunity defense.'" See id. (quoting Jean, 155 F.3d at 709).

With the requisite level of particularity, the specific right that Mrs. Szymecki asserts was

infringed is the right to video record the actions of police officers. For the reasons explained below, the Court finds that this specific right was not clearly established and therefore the affirmative defense of qualified immunity applies.

In her response to Deputy Houck's motion to dismiss, Mrs. Szymecki relied on two decisions from courts outside of the Fourth Circuit to establish that the specific right to video record the actions of police officers is protected by the First Amendment: Robinson v. Fetterman, 378 F.Supp.2d 534 (E.D.Pa. 2005); and Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000).[4] Mrs. Szymecki did not cite any decision by the Supreme Court, any decision by the Court of Appeals for the Fourth Circuit, any decision by any district court within the Fourth Circuit, or any decision by the Supreme Court of Virginia to support this proposition. While the Court found that the reasoning provided in both Robinson and City of Cumming to be instructive, the fact that the Court found that an individual might have the right to video record police conduct, subject to reasonable time, place and manner restrictions, does not mean that the Court found that this specific right was clearly established. Instead, given that Mrs. Szymecki was unable to point to any Supreme Court, Fourth Circuit, or Supreme Court of Virginia precedent acknowledging the existence of this specific right, the Court determined that this right was not clearly established for the purposes of the qualified immunity analysis. Accordingly, because the specific right implicated in this matter was not clearly established at the time of the alleged constitutionally violative conduct, the Court **FINDS** that the affirmative defense of qualified immunity applies and, therefore, **GRANTS** Deputy Houck's motion for summary judgment.

---

[4] During argument on Deputy Houck's motion after the close of plaintiff's case-in-chief, plaintiff's counsel stated that the only case he had to support the existence of this right was Robinson v. Fetterman.

## V. Conclusion

For the reasons explained herein, Deputy Houck's Motion is **GRANTED**.  Accordingly,

Mrs. Szymecki's First Amendment retaliation claim, the only remaining allegation in her

complaint, against Deputy Houck is **DISMISSED** with prejudice.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

_____/s/_____
Henry Coke Morgan, Jr.
**Senior United States District Judge**

_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
DATE: 12/17/08